UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA

                Plaintiff,                MEMORANDUM AND ORDER
                                                      18-CR-00048

  - against -

PEDRO GONZALEZ CUETO

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

On November 2, 2018, following a three-day trial, a jury found Pedro Gonzales Cueto ("Defendant") guilty on all counts of the superseding indictment: (1) conspiracy to import cocaine in violation of Sections 963 and 960(b)(2)(B)(ii) of Title 21 of the United States Code; (2) importation of cocaine in violation of Sections 952(a), 960(a)(1), and 960(b)(2)(B)(ii) of Title 21 of the United States Code; (3) conspiracy to possess cocaine with intent to distribute in violation of Sections 846 and 841(b)(1)(B)(ii)(II) of Title 21 of the United States Code; and (4) possession with the intent to distribute cocaine in violation of Sections 841(a)(1) and 841(b)(1)(B)(ii)(II). (ECF No. 59). Pending before the Court is the Defendant's motion to set aside the verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial pursuant to Rule 33 of the same. (ECF No. 67). For the reasons explained below, the Defendant's motion is **DENIED**.

## RULE 29

In seeking relief pursuant to Rule 29, the Defendant challenges the sufficiency of the evidence to support his convictions of all four counts. That Rule provides that the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a

conviction." The evidence, whether direct or circumstantial, must be assessed most favorably to the Government, drawing every inference in its favor. *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983) (overruled on other grounds). A conviction must be affirmed if the jury could have found the Defendant guilty beyond a reasonable doubt from the evidence and the inferences fairly and reasonably drawn from it. *United States v. Skowronski*, 968 F.2d 242, 247 (2d Cir. 1992) (overruled on other grounds). The determination of credibility is solely in the province of the jury and the Court must not usurp its role. *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

During the trial, the Government called Joel Yarleque, one of Defendant's co-conspirators, as a witness. Mr. Yarleque testified that:

- he met the Defendant through his friend Raul Moron, (Tr. 203:8; 206:25-207:4), and the three of them worked together to bring drugs from Peru to the United States. (Tr. 207:5-7).

- the Defendant was introduced to Raul Moron by Moron's girlfriend, and the two became close friends. (Tr. 210:25-211:10).

- he conspired with the Defendant to bring drugs into United States approximately two to five times. (Tr. 200:3-6).

- Raul Moron's job was to put the drugs together in Peru, the Defendant's job was to travel to Peru and bring the drugs back to the United States, and his job was to pick up the drugs and deliver them by sending his uncle Walter Yarleque. (Tr. 207:17-208:20).

- he told Raul Moron that he did not think it was a good idea to send the luggage containing the drugs with the Defendant because he travelled to Peru too many times before. (Tr. 212:19-23).

- Raul Moron spoke to the Defendant and there was no problem with the Defendant bringing the drugs to the United States, and that the Defendant knew he was doing so. (Tr. 213:4-7; 215:3-5).
- he would never hide his drugs in a stranger's suitcase if that person did not know the drugs were there because the drugs could get lost and he did not want "to get in trouble." (Tr. 215:23-216:7).

The Defendant argues in sum that a reasonable jury could not have found Mr. Yarleque's testimony credible because (1) the Defendant claims they never met and (2) he would have testified against anyone. (ECF No. 67-1 at 2-3). Whether Mr. Yarleque or the Defendant was to be deemed credible was for the jury to determine and it was Mr. Yarleque who was obviously chosen. But even if the jury chose to believe the Defendant, there was other evidence that supported his conviction. For example, Ron Suess, Supervisor of Customs and Border Protection, testified that the number of trips an individual has taken to a particular country is an indication that he may be importing drugs, (Tr. 23:11-14; 24:16-25:2), and that out of approximately 14 stamps on the Defendant's passport, approximately seven of them were from Peru. (Tr. 29:6-14; 51:20-22). Further, Detective Alfred Hernandez of the New York City Police Department and Drug Enforcement Administration testified that the street value of the amount of cocaine the Defendant brought to the United States was worth $320,000, and that drug couriers "use people that are trusted, people that are reliable, that they can track, they can find their relations, the people who they are related to, their friends and family. They want to reduce the risk of losing drugs," (Tr. 277:21-279:3; Tr. 280:6-18), and Mr. Yarleque testified that he would never risk losing that amount of drugs to someone who did not know what he was carrying. (Tr. 215:23-216:7). A

reasonable jury could infer, through that circumstantial evidence, that the Defendant knew that the drugs were inside the suitcase.

The Court has previously noted that the clearest and most instructive distillation of the many elaborations of Rule 33 was written by Judge Prettyman in *Curly v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947), cert. denied, 331 U.S. 837 (1947), as follows:

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

*See United States v. Person*, No. 15-CR-466 (ILG), 2017 WL 2455072, at *1 (E.D.N.Y. June 6, 2017), *reconsideration denied*, No. 15-CR-466 (ILG), 2017 WL 2774232 (E.D.N.Y. June 26, 2017), and *aff'd*, No. 17-2279-CR, 2018 WL 3860511 (2d Cir. Aug. 14, 2018). The "defendant who makes a sufficiency challenge bears a heavy burden. [The Defendant] has not carried that burden" and his motion is denied. *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993).

## **RULE 33**

The Defendant moves for a new trial pursuant to Rule 33, which provides that the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." At one point in the narrative of this case, the Defendant was to make a controlled delivery on December 14, 2017, of the cocaine filled suitcase under the direction of Special Agent Lamont Fraser. Special Agent Fraser testified that he instructed the Defendant to set up a meeting with one of his co-conspirators, Walter Yarleque, at a Dunkin' Donuts in Stamford, Connecticut, and to deliver the suitcase in exchange for money. Before the meeting at Dunkin' Donuts, Special Agent Fraser met

4

with the Defendant at the Stamford Police Department, where he installed a recording application on the Defendant's cell phone to record the conversations between the Defendant and Walter Yarleque. He explained to the Defendant, in English and in Spanish, that once the application was running, the Defendant only had to "leave [the cell phone] in his pocket." He testified that at the controlled delivery, the recording application was turned off three times, and the Defendant's conversation with Walter Yarleque was not recorded. (Tr. 129:20-142:11).

The Defendant's motion is prompted by the Court's decision to preclude two defense witnesses from testifying—Michael Padden and Rachel Bass, the Defendant's prior counsel and a paralegal, respectively. After Special Agent Fraser testified that the Defendant purposely turned off his cell phone's recording application during the controlled delivery, the Defendant sought to introduce those witnesses to testify as to the Defendant's understanding, or lack thereof, regarding the recording application he was instructed to use. (Tr. 291:14-20; 294:14-21). During a sidebar, the Government argued that the conversations that the Defendant had with Mr. Padden and Ms. Bass had nothing to do with the recording application or the device that was used during the controlled delivery. (Tr. 293:11-16; 297:8-22). Those conversations involved "a completely different application and a completely different device." (Tr. 293:19-20). The Defendant argued that the witnesses' testimony would establish that "he is technologically inept, and that's the point, that he can't use the technology." (Tr. 293:21-23). The Court reasoned:

> Look, the defense is entitled to a fair trial and so is the Government. If what the defense is trying to do would really be irrelevant, a complete distortion of what in fact the Government presented would be, then it shouldn't be offered, it shouldn't be done, period. If what I'm hearing is that the event that took place in November at a proffer involved a telephone, which did not include the app, whatever that app is, that was subsequently provided on a completely different telephone call to your client a month or whatever later, sometime in December I think it was, are two different things.

5

> You can't establish – we are going to now have expert testimony with respect to apps on the telephone, that what was being shown to your client at a proffer session was not an app which was anywhere near, like, or similar to the app which was provided to him in December. I'm not going to allow it. Okay . . . .
>
> What I think should be done is call your client to testify that he didn't understand what it was that this app was about, how to use it, or what his problem was, if it was being turned off wasn't being done deliberately.

(Tr. 298:7-299:20).

While the Defendant is entitled to a defense, he is not entitled to present evidence that is irrelevant or misleading. Fed. R. Evid. 402; Fed. R. Evid. 403. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Defendant's alleged interference with a recording application during a controlled delivery in December 2017, after he was arrested, is window dressing and is irrelevant to the issue at the heart of this case—whether he knew, on the day he arrived in the United States, that his luggage contained cocaine. Further, the testimony of Michael Padden and Rachel Bass as to the Defendant's understanding of a different application shown to him on a different date is of no consequence to that issue or to the Defendant's understanding of the application used during the controlled delivery. Notably, when the Defendant was shown how to use the application during the controlled delivery, he was simply told "to leave it in his pocket" and that "[h]e doesn't have to do anything else, just leave it in his pocket." (Tr. 134:16-18). The proposed witnesses' testimony was not being offered, and could not have been offered, to show that the Defendant did not take his cell phone out of his pocket during the controlled delivery. Accordingly, the Court finds that the interest of justice does not require a new trial and the Defendant's motion is denied.

SO ORDERED.

Dated:     Brooklyn, New York           /s_____
            December 21, 2018             I. Leo Glasser     U.S.D.J.